IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 22-30 |
| EMILIANO RODRIGUEZ | : | |

a/k/a "Ismael Del Valle,"
a/k/a "Luis Borges,"
a/k/a "Jaime Rivera"

### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Emiliano Rodriguez was charged by indictment with one count of trafficking in counterfeit goods, in violation of 18 U.S.C. § 2320 (Count One), and two counts of causing delivery of hazardous materials by air carrier, in violation of 49 U.S.C. § 46312 (Counts Two and Three) arising from the illegal importation of motor vehicle airbags from China which had explosive parts. On February 9, 2023, he pleaded guilty to Counts Two and Three of the indictment pursuant to a plea agreement.[1] United States Probation ("Probation") has properly calculated the advisory guideline range of 21 to 27 months' imprisonment. For the reasons set for below, the government recommends a within-guideline sentence for this defendant.

I.    FACTUAL BACKGROUND

China has been identified as the world's largest exporter of counterfeit commodities, including automobile airbags. Those involved in the trade of China-made airbags engage in this practice to increase profits from their sales by decreasing the costs of the parts used to replace

---

[1]     Per the plea agreement, the government will move to dismiss Count One at the time of sentencing. Further, pursuant to USSG 1B1.2 (c), the defendant admitted that he trafficked in counterfeit airbags from in or about January 2017 through on or about October 30, 2019.

the original items. Unsuspecting motorists who purchase remanufactured vehicles are often unaware that counterfeit parts have been installed. Vehicles with such parts are driven on public roads and expose the driver, passengers and public to the hazards associated with malfunctions associated with substandard parts from China. Counterfeit China made airbags are known to be incapable of timely inflation, and/or have caused serious injury resulting in death from defective airbags overinflating.

The United States Customs and Border Protection ("CBP") databases showed that since 2017, defendant Rodriguez was the consignee of approximately 105 shipments of goods originating from known suspicious exporters in China, almost all of which were sent to his residence in Philadelphia. Based on this information, Homeland Security Investigations ("HSI") initiated an investigation.

On or about September 11, 2019, CBP identified a shipment of suspected airbags illegally made in China that was intended for Rodriguez. The parcel was addressed to his residence. Telephone number (267) 978-4462 was printed on the shipping label of the package as a means of contact for the intended recipient and bore airway bill number 33319464190. The manifest described the contents as "METAL BRACKET."

On September 11, 2019, CBP Philadelphia, Office of Field Operations ("OFO") officers, in coordination with HSI-Philadelphia agents, conducted an examination of the parcel at the DHL Express Service Station in Philadelphia. The parcel contained twelve (12) cylindrical, metal containers with Chinese writing. HSI and CBP identified the metal containers as the explosive portion of an airbag module responsible for the instantaneous inflation and safe deployment of the airbag installed in vehicles for the protection of drivers and passengers in the

event of a collision. Thus, the manifest information for airline transport was false, and failed to disclose that the parcel contained explosive material.

CBP and HSI requested the assistance of the Philadelphia Police Department (PPD), Bomb Disposal Unit (BDU) due to the explosive nature of the devices discovered in the parcel and the uncertainty of the reliability, safety, and contents inside the metal cylinders. PPD/BDU bomb technicians examined and identified the contents of the package as "commercial airbag initiators" and concluded that the devices could be dangerous if exposed to static electric shock, excessive heat or significant force.

On or about September 11, 2019, CBP identified a second shipment of suspected airbags mailed from Guangzhou, China, using DHL services. This parcel was identified in Customs databases with air waybill number 1670159573 and was manifested to CBP as "Plastic Panels." The airway bill number 1670159573 was also consigned to Rodriguez at the same location as the previous shipment. Telephone number (267) 978-4462 was listed on the shipping label of that parcel as a contact telephone number for the intended recipient. The second parcel contained three (3) airbags, twelve (12) plastic steering wheel covers and four (4) Honda® steering wheel emblems.

A representative from American Honda Motor Corporation (AHM) reviewed photos of the inflators imported by the defendant and determined that they were counterfeit.

The telephone number (267) 978-4462, which appeared on the shipping label of both parcels, linked to a website for the defendant's auto repair and service business. The website for EP Auto Repair ("EP") advertised "airbag module reset for all Honda vehicles."

On or about September 24, 2019, HSI agents were notified by CBP of an additional shipment of suspected airbags originating from China and addressed to Rodriguez with air

waybill 897Y02GJ3BK. On or about October 1, 2019, CBP officers intercepted and examined the parcel identified with air waybill number 897Y02GJ3BK. The package contained twelve (12) counterfeit airbag actuators. The twelve actuators were similar to those intercepted and seized by CBP on September 11, 2019. The manifest for this shipment did not disclose that the parcel contained explosive material.

On or about October 16, 2019, agents executed search warrants at defendant Rodriguez's residence and auto repair business. Agents seized 450 airbag components and over 60 used airbag modules for various make/model vehicles. Rodriguez admitted to agents that he did not install original airbags, instead he installed "copies." Rodriguez said he does not buy original parts from the dealership because those parts were too expensive.

An ATF agent who examined the devices imported by defendant Rodriguez confirmed that the airbag devices contained explosives and were considered hazardous materials pursuant to Title 49, United States Code, Sections 5101 *et seq*. (Transportation of Hazardous Material) and the corresponding Hazardous Materials Regulations ('HMR"), including Title 49, Code of Federal Regulations, Section 173.166, airbag modules, also known as airbag inflators, are classified as Class 9 UN3268 dangerous goods, also known as hazardous materials, and must be classified, documented, described, packaged, marked, and labeled in accordance with the HMR, as set forth in Title 49, Code of Federal Regulations, Sections 171 through 180.

## II.   SENTENCING CALCULATION

### A.   Statutory Maximum Sentence

The statutory maximum penalty for a violation of 49 U.S.C. § 46312, delivery of hazardous material by air carrier, is five years' imprisonment, a three-year period of supervised release, a $25,000 fine, and a $100 special assessment (per Count).

The defendant faces a total statutory maximum penalty of 10 years' imprisonment, three years' supervised release, a $50,000 fine, and a $200 special assessment.

**B.     Sentencing Guidelines Calculation[2]**

Probation has prepared a PSR that calculated accurately the advisory guidelines as follows:

1.   Base Offense Level of 8 pursuant to USSG 2B5.3
2.   Special Offense Characteristics:  +10 levels pursuant to USSG 2B1.1(b)(1)(F)
3.   Total offense level of 18
4.   Minus three levels for acceptance of responsibility pursuant to USSG 3E1.1(a) and (b).

The above produces an adjusted Offense Level of 15. The defendant has three criminal history points putting him in Criminal History Category II resulting in an advisory guideline range of 21 to 27 months' imprisonment.

**III.     ANALYSIS OF 3553(a) FACTORS**

The defendant came to the United States from the Dominican Republic in 1992. He is a legal permanent resident, but not a United States citizen. In 2005, he and others kidnapped two men at gunpoint in a ransom extortion plot. For this serious, violent offense, the defendant was sentenced to five years in New York state prison followed by five years on parole which he completed in 2015. By January 2017, the defendant was involved in the criminal conduct for which he was convicted by this Court.

The defendant's crimes were serious. He knowingly imported counterfeit automobile airbags from China for profit. As he admitted, he purchased the illegal China made airbags for

---

[2]     The parties' stipulations per the plea agreement would have resulted in offense level of 21 which is higher than Probation's calculation of an offense level of 18. The lower level is to the benefit of the defendant. The government agrees with Probation's calculation and does not object to the guideline calculation in the PSR.

his auto repair business because they were cheaper. PSR ¶ 28. And, as he knew from his almost 35 years' experience as an auto mechanic (PSR ¶ 75), airbags contain explosive materials which can be very dangerous when not properly manufactured. Indeed, Daicel Safety Systems Corporation ("Daicel"), a Japanese chemical company that manufactures airbags and other safety equipment for Honda and other auto manufacturers, examined airbag inflators seized from the defendant and compared those airbags to Honda original equipment. *See* Attachment A – *Review of HSI Counterfeit Airbag Inflators Report*). Daicel concluded that the "parts, if deployed in a crash, would be a significant safety concern to occupants." *Id*. p. 8. Further, according to Daicel, the "Best Case" was that the counterfeit airbag inflators "would not provide proper/intended occupant protection," and the "Worst Case" was that these airbags "would cause direct harm to the occupant." *Id.* p. 8. Further, the improper way these counterfeit devices were shipped to the defendant was equally hazardous as the airbags could have also exploded during air transport. Such devices must be handled using strict safety protocols, especially when transported by plane which can subject the explosive material contained therein to extreme changes in temperature and air pressure. Over at least a two-year period the defendant repeatedly purchased these counterfeit devices from China that were shipped with false labeling so the air carrier would not know it was flying with the equivalent of a flimsily packaged bomb in its cargo hold. The defendant was willing to put others at risk to line his own pockets.

The defendant does not appear to have come to terms with the seriousness of his conduct. He told Probation "I just want to move forward. We all make mistakes, but I have been trying to maintain and run an honest business." PSR ¶ 32. The defendant's actions were not a "mistake" – he intentionally conducted these illegal business transactions over at least a two-year period. And during this time, the defendant used EP Auto Repair ("EP") - his so-called "honest business" - to

place these potentially hazardous counterfeit devices in cars that are currently operating on our roads and highways.[3]

There is no restitution due in this case and the defendant does not have any medical issues for this Court to consider under 3553(a). While he does not have any formal education past the 8th grade, the defendant is an experienced auto mechanic which can be a lucrative trade. While he does appear to be the breadwinner for his wife and three daughters, this is not a basis for a downward variance. The defendant knew that he was putting his family in jeopardy when he chose to commit these crimes. A prison sentence is a natural consequence of the defendant's conscious decision to break the law.

## IV.    CONCLUSION

Based on a thorough consideration of the 3553(a) factors as set forth above, a sentence within the advisory guideline range of 21 to 27 months' imprisonment is fully justified and appropriate for this defendant.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*/s/ M. Beth Leahy*
M. BETH LEAHY
Assistant United States Attorney

---

[3]    The government has been unable to notify individuals who may be operating vehicles with unsafe, counterfeit airbags because the defendant has declined to identify those customers.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Government's Sentencing

Memorandum has been served by ECF and electronic mail on:

Katrina Young, Esq.
Assistant Federal Defender
Federal Community Defender Office for the Eastern District of Pennsylvania
601 Walnut Street, Suite 540W
Philadelphia, PA 19106
E-mail: katrina_young@fd.org

*/s/ M. Beth Leahy*
M. BETH LEAHY
Assistant United States Attorney

DATED: July 27, 2023

ATTACHMENT A

# Review of HSI Counterfeit Airbag Inflators Report (Exhibit #2 and #3)

**Rev. NC**

**11/18/2022**

**Daicel Safety Systems Americas, Inc.**



DAICEL
The Best Solution for You

**Feedback on the exterior configuration of the alleged counterfeit airbag inflators in the testing compared to a Honda/Daicel original equipment manufacturer (OEM) airbag inflator.**



The Best Solution for You

| Exhibit #2 | Reference Inflator (Z3C) |
|---|---|
| <br> | <br> |

- Initiator orientation incorrect ①
- Notch in incorrect location ②
- Weld appears to be missing ③
- Incorrect joint between diffuser and closure. Weld possibly missing as well ④
- Incorrect diffuser outlet pattern (reference parts as 20 diffuser outlets) ⑤
- Incorrect serial number nomenclature ⑥

11/21/2022

The entire contents of this publication are copyrighted by Daicel. It is forbidden to duplicate or alter this document, or to use its content for another purpose, without the express permission of Daicel

Copyright © DAICEL CORPORATION All rights reserved.

2

**Feedback on the exterior configuration of the alleged counterfeit airbag inflators in the testing compared to a Honda/Daicel original equipment manufacturer (OEM) airbag inflator.**

**DAICEL**
*The Best Solution for You*

| Exhibit #3 | Reference Inflator (Z36) |
|---|---|





- Incorrect label ①
- Notch in incorrect location ②
- Valid serial number, but for incorrect inflator type ③
- Weld appears to be missing ④



11/21/2022

The entire contents of this publication are copyrighted by Daicel. It is forbidden to duplicate or alter this document, or to use its content for another purpose, without the express permission of Daicel.

Copyright © DAICEL CORPORATION All rights reserved.

3

**Feedback on the interior configuration of the alleged counterfeit airbag inflators in the testing compared to a Honda/Daicel original equipment manufacturer (OEM) airbag inflator.**

| Exhibit #2 | Reference Inflator (Z3C) |
|---|---|





- Main propellant visual appearance incorrect (color & shape) ①
- Secondary propellant / booster visual appearance incorrect (color & shape) ②
- Internal structure is very different and appears to be less complex ③
- No evidence of dual stage functionality (4 independent propellant/booster chambers) -> Inflator would likely not perform as intended ③

11/21/2022

The entire contents of this publication are copyrighted by Daicel. It is forbidden to duplicate or alter this document, or to use its content for another purpose, without the express permission of Daicel.

**DAICEL**
The Best Solution for You

Copyright © DAICEL CORPORATION All rights reserved.

4

**Feedback on the interior configuration of the alleged counterfeit airbag inflators in the testing compared to a Honda/Daicel original equipment manufacturer (OEM) airbag inflator.**

| Exhibit #3 | Reference Inflator (Z36) |
|---|---|



- Main propellant visual appearance incorrect (color & shape) ①
- Secondary propellant / booster visual appearance incorrect (color & shape) ②
- Internal structure is very different and appears to be less complex ③
- No evidence of dual stage functionality (4 independent propellant/booster chambers) -> Inflator would likely not perform as intended ③
- Unusual adhesive substance present on diffuser inside surface ④



The entire contents of this publication are copyrighted by Daicel. It is forbidden to duplicate or alter this document, or to use its content for another purpose, without the express permission of Daicel.

Copyright © DAICEL CORPORATION All rights reserved.

11/21/2022

5

DAICEL
The Best Solution for You

**Feedback on the chemicals identified in the alleged counterfeit airbag inflators testing compared to a Honda/Daicel original equipment manufacturer (OEM) airbag inflator.**

- Clarify the quantity of each explosive mixture that is used in the Honda/Daicel original equipment manufacturer (OEM) airbag inflator

|  | 1st Stage Booster | 1st Stage Propellant | 2nd Stage Booster | 2nd Stage Propellant |
|---|---|---|---|---|
| Exhibit #2 | Color: Black Load: N/A | Color: White Load: 27g | Not present? | Not present? |
| Reference Part (Z3C) | Color: White Load: 2.1g | Color: Blue Load: 37.5g | Color: White Load: 2.1g | Color: White Load: 4.0g |
| Exhibit #3 | Color: Black Load: N/A | Color: White Load: 27g | Not present? | Not present? |
| Reference Part (Z3C) | Color: White Load: 2.1g | Color: Blue Load: 37.5g | Color: White Load: 2.1g | Color: White Load: 4.0g |

The entire contents of this publication are copyrighted by Daicel. It is forbidden to duplicate or alter this document, or to use its content for another purpose, without the express permission of Daicel

DAICEL
The Best Solution for You

Copyright © DAICEL CORPORATION All rights reserved.

**Feedback on the chemicals identified in the alleged counterfeit airbag inflators testing compared to a Honda/Daicel original equipment manufacturer (OEM) airbag inflator.**

Is that explosive mixture different from what was discovered in the testing report (outer compartment verses the inner compartments)? If so, how?

**Out Compartment (= 1ˢᵗ Stage): Guanidine Nitrate**
**Inner Compartment (= 2ⁿᵈ Stage) = Guanidine Nitrate**
**Inner Compartment (= Enhancer) = Nitroguanidine**

What are the physical characteristics (morphology) of the explosive mixture that is used in the Honda/Daicel original equipment manufacturer (OEM) airbag inflator and does that differ from what was discovered in the testing report. If so, how?

**The propellant analyzed does not match our Guanidine Nitrate formulation. Especially the lead components, magnesium, strontium and boron found.**

11/21/2022

The entire contents of this publication are copyrighted by Daicel. It is forbidden to duplicate or alter this document, or to use its content for another purpose, without the express permission of Daicel.

Copyright © DAICEL CORPORATION  All rights reserved.

7

**Are there any safety concerns identified with the alleged counterfeit airbag inflators in the testing report? Specifically, is there anything you notice from the airbag inflators tested that could or would create a safety concern if they were installed in an automobile? (Over inflation, Under inflation, Timing, etc.)**

- The data present for exhibit #2 and #3 would suggest that these parts, if deployed in a crash, would be a significant safety concern to occupants.

- <u>Best case</u> they would not provide proper / intended occupant protection
  - Incorrect deployment time, speed and inflation

- <u>Worst case</u> they would cause direct harm to the occupant
  - Possible fragmentation
  - Raspatories issue due to unknown gas effluent and particulate amount
  - Possible risk for burns due to unknown gas temperature

The entire contents of this publication are copyrighted by Daicel. It is forbidden to duplicate or alter this document, or to use its content for another purpose, without the express permission of Daicel.



Copyright © DAICEL CORPORATION All rights reserved.

8

11/21/2022



The entire contents of this publication are copyrighted by Daicel. It is forbidden to duplicate or alter this document, or to use its content for another purpose, without the express permission of Daicel.